## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE HERSHEY COMPANY,<br><br>             Plaintiff,<br><br>    v.<br><br>DOUG BEHRENS,<br><br>             Defendant. | Civil Action No. _____ |

## <u>COMPLAINT</u>

Plaintiff The Hershey Company ("Hershey") brings this action for monetary damages and, pursuant to the parties' relevant contracts, the attorneys' fees and expenses that it incurs in this action.

## PRELIMINARY STATEMENT

1.      Defendant Doug Behrens ("Behrens") orchestrated a secret plan to steal some of Hershey's most sensitive trade secret and confidential business information and hide his tracks after doing so.  He got caught.  Nevertheless, Behrens refuses to repay to Hershey a single cent of the hundreds of thousands of dollars he owes to it under multiple contracts.  Accordingly, Hershey has no choice but to file this action.

2.      Behrens is an executive who served as President of Amplify Snack Brands, Inc. (a healthy snack brand owned by Hershey)[1] from May 1, 2018 to August 16, 2019 and, during that roughly 16-month stint, collected more than $1.5 million in compensation.

3.      On July 16, 2019, Behrens voluntarily resigned from Amplify.  Hershey and Behrens agreed that Behrens would continue working for 30 days to assist with the transition of

---

[1] For simplicity, Hershey and Amplify are referred to collectively herein as "Hershey" or "the Company."

his duties (which he did) and that his last day of employment would be August 16, 2019 (which it was).

4.      At the time that he resigned (or shortly thereafter), Behrens knew that that he would be jumping ship to join KIND, LLC ("KIND"), which is also a healthy snack brand.[2] Behrens, however, hid that fact from Hershey:  he professed to be unsure about his future plans even when Hershey directly asked him what those plans were and if they involved KIND.  Now, Hershey knows why Behrens played dumb.

5.      On his way out Hershey's door—i.e., during that 30-day period after he gave his resignation but before his last day of employment, during which he hid his future plans from Hershey and was supposed to be *helping* Hershey transition his role—Behrens began secretly sending from his Hershey work email account to his personal Yahoo! email address *more than 100 Hershey documents*, many of which contained Hershey's trade secret and/or confidential business information.

6.      Behrens's operation began on July 23, 2019.  That afternoon, during a roughly four-hour period during which Behrens was presumably scouring his files to find the ones that would be most valuable to him upon his departure, Behrens sent roughly *70* emails and documents to himself that contained Hershey's confidential and trade secret information.  He had received many of those documents several months earlier (e.g., as early as *January* 2019) and

---

[2] Although Behrens is bound by a covenant not to compete with Hershey and not to solicit certain of its customers and employees, Hershey is not seeking injunctive relief of any sort and is not attempting to prevent Behrens from working for KIND.  Hershey, Behrens, and KIND were able to resolve the aspects of this dispute relating to potential claims for injunctive relief based, in part, on representations by Behrens and KIND that they have not competed and do not plan to compete with Hershey and that Behrens has abided and will continue to abide by his post-employment non-competition and non-solicitation obligations to Hershey.  If discovery in this matter reveals otherwise (or if other information reveals otherwise), Hershey reserves the right to amend this Complaint to add allegations regarding Behrens's breach of his confidentiality, non-compete and non-solicit obligations and/or to add other defendants, including but not limited to KIND, and to seek all forms of injunctive relief and additional monetary damages.

had no legitimate Hershey-related reason to access them in *July* 2019, let alone send them to his personal Yahoo! account. Moreover, many of the documents were labeled "CONFIDENTIAL," and one was even sent to him with a warning to "keep [it] to yourself."

7.      Behrens did not stop, however, after taking that first loot. He went back to the well on at least four separate days—July 24, July 30, August 1, and August 6—and continued to send to his personal Yahoo! account emails and documents containing Hershey's confidential and trade secret information.

8.      Behrens then tried to cover his tracks. On August 10, 2019, he re-installed the Windows operating system on his work laptop, which wiped all data from it and made it impossible to tell what activity (or misconduct) took place on the laptop before it was wiped (e.g., Hershey cannot determine whether Behrens downloaded files from his laptop to a portable storage device, which seems likely given his other misconduct). The night after he wiped his system (on August 11, 2019 at 1:10 a.m.), Behrens sent to his personal account an email titled "Check – Test" in an apparent attempt to see if his wiping efforts had removed evidence of *emails* that he sent to himself (which, thankfully for Hershey, they did not).

9.      Before he started employment at Hershey, Behrens signed an Offer Letter, which incorporated and was made contingent upon his agreeing to the terms of an Employee Confidentiality and Restrictive Covenant Agreement ("Employment Agreement").

10.      The Offer Letter sets forth the terms of Behrens's generous compensation package, which included a $250,000 Sign-On Bonus.

11.      The Offer Letter makes clear that Behrens would be required to repay the $250,000 Sign-On bonus if he voluntarily terminated his employment within 24 months of his start date. *See id.* at 2 ("If you voluntarily terminate your employment with The Hershey

Company within 24 months of your Start Date, you agree to repay the full amount of the Sign-On Bonus within 30 days of your last day of employment.").  It further states that "[y]our signature below indicates your agreement to these repayment terms," and Behrens signed.  *Id.*

12.     Behrens announced his voluntary resignation from Hershey on July 16, 2019.  His last day of employment was August 16, 2019.  Accordingly, he voluntarily terminated his employment within 24 months of his start date (which was May 1, 2018) and, thus, is contractually obligated to repay the $250,000 Sign-On Bonus to Hershey.

13.     Further, later in his employment (on August 1, 2018) Behrens accepted the terms of a Notice of Special Award of Restricted Stock Units ("Stock Award"), under which he was granted hundreds of thousands of dollars' worth of Hershey Restricted Stock Units ("RSUs").[3]

14.     Pursuant to the Stock Award, Behrens agreed (among other things) that he would not during or at any time after the end of his employment, use or disclose any of Hershey's trade secrets or other confidential business information.

15.     Behrens agreed that if he breached the terms of the Stock Award (e.g., by violating his confidentiality obligations), he would immediately pay to Hershey the cash equivalent value of any RSUs that had vested.

16.     Put simply, the Offer Letter/Employment Agreement and Stock Award conferred on Behrens a rich compensation package in return for Behrens's promise to (among other things) (1) pay back the Sign-On bonus if he voluntarily terminated his employment within 24 months of his start date and (2) not use or disclose Hershey's trade secret and confidential information.

---

[3] A true and correct copy of Behrens's signed offer letter, which expressly states that the offer letter is contingent upon the terms of the Employment Agreement, is attached hereto as Exhibit A.  A true and correct copy of the Employment Agreement is attached hereto as Exhibit B.  A true and correct copy of the Stock Award is attached hereto as Exhibit C.

Behrens broke his promises and tried to hide his tracks.  His conduct is a breach of the Offer Letter/Employment Agreement and Stock Award.

17.     To date, Behrens has rebuffed Hershey's requests that he repay the money that he owes Hershey—specifically, the (1) $250,000 "Sign-On" bonus and (2) cash equivalent of the vested stock units that have been distributed to him under the Stock Award.

18.     Thus, despite its good-faith efforts to resolve this matter amicably, Hershey had no choice but to initiate this action to recover the money that Behrens owes it.  Hershey does not seek to prevent Behrens from working for KIND (he is free to continue doing so) based on the information available at this time, but simply to enforce its contractual rights to the money that Behrens owes it.

## THE PARTIES

19.     Plaintiff The Hershey Company is a Delaware corporation with its headquarters and principal place of business at 19 East Chocolate Avenue, Hershey, Pennsylvania 17033. Hershey owns Amplify Snack Brands, Inc., which is a Delaware corporation with a principal place of business at 500 West 5th Street, Suite 900, Austin, Texas 78701.

20.     Defendant Doug Behrens is the former Chief Customer Officer and President of Amplify.  His last known address is 15079 Prairie Place, Broomfield, Colorado 80020.  He is now employed by KIND as its Chief Customer Officer.

## JURISDICTION AND VENUE

21.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties (Hershey is a Pennsylvania citizen and Behrens is a Colorado citizen), and the amount in controversy exceeds $75,000.

22.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and because the

Offer Letter/Employment Agreement and Stock Award each contain valid and enforceable

provisions providing that "any action or proceeding relating to a breach or the enforceability of

this Agreement [or Stock Award] will be brought only in the federal or state courts, as

appropriate, located in the Commonwealth of Pennsylvania."  Ex. B, Employment Agreement,

¶ 12(a); Ex., C, Stock Award, ¶ 11(G).

## FACTUAL ALLEGATIONS

A.     **Hershey and Behrens Enter into the Offer Letter/Employment Agreement and Stock Award, Pursuant to Which Behrens Promises to Repay the Sign-On Bonus if He Voluntarily Leaves Hershey Within 24 Months and Pay the Cash Equivalent of Any Vested Stock If He Breaches His Confidentiality Obligations.**

23.     Hershey is a global confectionery leader known for its chocolate, sweets, mints,

gum and other great-tasting snacks.  In addition to being the largest producer of quality chocolate

in the United States, Hershey is also a leading snack maker.  Hershey markets, sells, and

distributes its products under more than 80 brand names in approximately 90 countries

worldwide.

24.     In January 2018, Hershey acquired Amplify, which owns several popular "better-

for-you" snack brands such as *SkinnyPop*, *Oatmega*, and *Paqui*.  Hershey made this acquisition

to capture more consumer snacking occasions by creating a broader portfolio of brands.

25.     On April 10, 2018, Hershey offered to Behrens a position as Chief Customer

Officer of Amplify.  *See* Ex. A, Offer Letter.  The Offer Letter sets forth the terms of Behrens's

compensation, which included:

- A $450,000 base salary;

- A $250,000 Sign-On bonus;

- A short-term incentive target of 65% of base salary;

- Annual anniversary bonuses of $500,000 (after year one), $750,000 (after year two), and $1,000,000 (after year three);

- A one-time new hire equity award of 150% of base salary, to be delivered in Hershey RSUs and vest over three years at 33.33% per year; and

- Beginning January 1, 2019, participation in Amplify's long-term incentive plan.

*See id.* at 1-3.

26.     The Offer Letter also provides that Behrens would be required to repay the $250,000 Sign-On bonus if he voluntarily terminated his employment within 24 months of his start date. *See id.* at 2 ("If you voluntarily terminate your employment with The Hershey Company within 24 months of your Start Date, you agree to repay the full amount of the Sign-On Bonus within 30 days of your last day of employment."). It further states that "[y]our signature below indicates your agreement to these repayment terms," and Behrens signed. *Id.*

27.     The Offer Letter further makes clear that Behrens's employment was contingent on the terms of the Employment Agreement, and urged Behrens to review the Employment Agreement carefully:

> Your employment is contingent upon your signing the attached Employee Confidentiality and Restrictive Covenant Agreement (ECRCA). The ECRCA protects the Company's intellectual property, talent, and competitive advantages while also meeting stockholder expectations governing executive compensation. . . . I urge you to read this agreement carefully and make sure that you understand its terms.

*See* Ex. A, Offer Letter, at 4.

28.     On April 14, 2018, Behrens signed and accepted the Offer Letter, incorporating the terms of the Employment Agreement. *See* Ex. A, Offer Letter, at 5.

29.     On July 11, 2018, Behrens received the Stock Award as set forth in his Offer

Letter.  Pursuant to (and as consideration for) the Award, Behrens promised (among other things)

to protect Hershey's trade secret and confidential information:

> Grantee acknowledges that due to the nature of his/her employment and the
> position of trust that he/she holds or will hold with Hershey, he/she will have
> access to, learn, be provided with, and in some cases will prepare and create for
> the Company, Confidential Information. Grantee acknowledges and agrees that
> Confidential Information, whether or not in written form, is the exclusive property
> of Hershey, that it has been and will continue to be of critical importance to the
> business of Hershey, and that the disclosure of it will cause the Company
> substantial and irreparable harm.  *Accordingly, Grantee will not, either during
> his/her employment or at any time after the termination of his/her employment
> with Hershey, use or disclose any Confidential Information[4] relating to the
> business of the Company which is not generally available to the public.*

*See* Ex. C, Stock Award, ¶¶ 6, 7 (emphasis added).

30.     Behrens and Hershey further agreed in the Stock Award that "in addition to the

[injunctive] relief described in paragraph 11(A), if the Committee determines, in its sole

judgment, that [Behrens] has violated or threatened to violate the terms of [the Stock Award],

then Hershey may cancel any part of the grant that has not vested [and Behrens] *shall also

immediately deliver to Hershey, the cash equivalent of any RSUs that have vested under this

[Stock Award], inclusive of any dividends paid on any vested shares.*"  *See* Ex. C, Stock Award,

¶ 11(B) (emphasis added).  The "Committee" referred to is the Compensation and Executive

Organization Committee of Hershey's Board of Directors.  *Id.* ¶ 2(B)).

---

[4] The Stock Award defines "Confidential Information" as "trade secrets and other confidential and
proprietary information relating to the Company's business, including, but not limited to, information
about Hershey's manufacturing processes; manuals, recipes and ingredient percentages; engineering
drawings; product and process research and development; new product information; cost information;
supplier data; strategic business information; information related to Hershey's legal strategies or legal
advice rendered to Hershey; marketing, financial and business development information, plans, forecasts,
reports and budgets; customer information; new product strategies, plans and project activities; and
acquisition and divestiture strategies, plans and project activities."  *See* Ex. C, Stock Award ¶ 2(D).

**B.      Behrens Is Given Access to Hershey's Trade Secret and Confidential Information, Which Hershey Takes Substantial Measures to Protect.**

31.      On May 1, 2018, Behrens began his employment with Hershey.  He served from May 1, 2018 to October 2018 as Amplify's Chief Customer Officer and from October 2018 to August 2019 as Amplify's President.

32.      In both roles (Chief Customer Officer and President), Hershey gave Behrens access to trade secret and confidential information that is not available to the public.  On a daily basis, Behrens was privy to Hershey's (and specifically Amplify's) most sensitive business information, including but not limited to the Company's financial condition, market/business strategies, product and pricing ideas, and customer details and plans.

33.      This information is among Hershey's most valued and indispensable assets. Accordingly, Hershey considers it to be and treats it as highly confidential trade secret information.

34.      Indeed, it is precisely *because* Behrens would have access to such information that Hershey included in the Stock Award the provisions to protect that information.

35.      In addition to having Behrens sign the Stock Award, Hershey takes, and at all relevant times has taken, reasonable steps to safeguard the secrecy of such information and has instituted controls to keep this information confidential.  For example, Hershey (a) requires executives who have access to the level of confidential information that Behrens did to agree to limit the use and disclosure of that information; (b) requires its customers, partners and vendors to sign non-disclosure agreements; (c) password protects its computer systems and employs various physical security measures at all of its facilities; and (d) adopts and enforces several written policies that are designed to protect its confidential information and trade secrets, including following the concept of "need-to-know," pursuant to which employees are only

provided the minimum access to confidential information needed to perform their assigned duties.

**C.    Behrens Voluntarily Resigns from Hershey and Accepts a Position as KIND's Chief Customer Officer.**

36.    On July 16, 2019, Behrens voluntarily resigned from his role as Amplify's President.  Hershey and Behrens agreed that Behrens would continue working for 30 days to assist with the transition of his duties (which he did) and that his last day of employment would be August 16, 2019 (which it was).

37.    On August 14, 2019, Behrens confirmed to Hershey that he would be joining KIND as its Chief Customer Officer.  KIND, like Amplify, is a healthy snack brand company.

38.    Hershey reminded Behrens that, because he was voluntarily leaving the Company within 24 months of his start date, he was contractually obligated to repay his Sign-On bonus.

**D.    Hershey Asks Behrens to Confirm That He Will Pay Back His Sign-On Bonus, But Behrens Does Not Respond.**

39.    On August 20, 2019, Hershey wrote to Behrens to request that (among other things) he pay back his $250,000 Sign-On Bonus (as he was contractually obligated to do since he voluntarily resigned from Hershey within 24 months of his start date):

> Your April 10, 2018 offer letter, which you signed and agreed to its terms, outlined that should you resign your employment within 24 months of your May start date, you would be required to reimburse The Hershey Company for your sign-on bonus of $250,000.00.  Please provide a cashier's check (or contact me for wiring instructions) made payable to The Hershey Company in the amount of $250,000.

*See* Exhibit D, which is a true and correct copy of the August 20, 2019 letter.

40.    Behrens did not respond to that letter.

**E.      Hershey Discovers That, in the Period Before His Exit, Behrens Sent to His Personal Email Account More Than 100 Hershey Documents and Wiped All Data from His Laptop.**

41.      After Behrens exited the Company, Hershey conducted a forensic analysis of his work email account and hard drive.  What it found is troubling.

42.      Between July 16, 2019 and August 16, 2019, Behrens sent from his Amplify account to his personal email account (behrens_doug@yahoo.com) more than 100 files, many of which contained Hershey's trade secret and/or confidential information.  For example:

a.      On July 23, 2019, Behrens sent to his personal email account a 21-slide deck that was presented to Hershey's Executive Committee in January 2019.  The presentation, stamped "Company Confidential," seeks the Committee's approval for a confidential investment strategy.  Notably, the presentation initially was sent to Behrens on January 26, 2019 (with instructions to "keep [it] to [him]self"), so it is especially curious and troubling that Behrens suddenly felt the need to forward the presentation to his personal account *six months* after receiving it but just *seven days* after he announced his resignation.

| | |
|---|---|
| From: | Doug Behrens <IMCEAEX-_O=EXCHANGELABS_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+20+28FYDIBOHF23SPDLT+29_CN=RECIPIENTS_CN=967CC93F50F7465E932F3E6F1D294D67-DBEHRENS██████Redacted██████ |
| Sent: | Tuesday, July 23, 2019 12:10 PM |
| To: | behrens_doug@yahoo.com |
| Subject: | FW: Venture materials for EC meeting |
| Attachments: | Venture Fund_EC_Draft.pdf |

**From:** Meulen, Kristoffel Frederick <kmeulen@hersheys.com>
**Sent:** Saturday, January 26, 2019 9:51 AM
**To:** Doug Behrens <dbehrens@amplifysnacks.com>
**Subject:** FW: Venture materials for EC meeting

Keep to yourself. By the way check out my first investment at ██Redacted██
██Redacted██

b.      On July 23, 2019, Behrens sent to his personal email account a 53-slide deck titled "M&A Steering Committee Meeting."  The deck is stamped "COMPANY CONFIDENTIAL" and outlines various highly confidential mergers and acquisitions being contemplated by Hershey, including in the healthy snack market in which KIND operates.  This deck, too, was sent to Behrens several months earlier (on January 9, 2019) and Behrens was specifically told to "keep [it] to [him]self."  There is no legitimate Hershey business reason why Behrens decided almost six months later to send it to his personal account.

| | |
|---|---|
| **From:** | Doug Behrens |
| **Sent:** | Tuesday, July 23, 2019 12:28 PM |
| **To:** | behrens_doug@yahoo.com |
| **Subject:** | FW: |
| **Attachments:** | MA Steering Committee Meeting - January (002).pdf |

**From:** Meulen, Kristoffel Frederick ████Redacted████
**Sent:** Wednesday, January 9, 2019 9:31 PM
**To:** Doug Behrens <dbehrens@amplifysnacks.com>
**Subject:**

**Keep to yourself**

c.      On July 23, 2019, Behrens sent to his personal email account a 20-slide deck that analyzes the snack bar market, including an analysis of each snack bar market in which KIND operates.  Like the decks described above, this deck was initially sent to Behrens several months earlier (on February 12, 2019), and there is no legitimate Hershey business reason why Behrens decided almost six months later to send it to his personal account.

| | |
|---|---|
| From: | Doug Behrens <IMCEAEX-_O=EXCHANGELABS_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+2O+28FYDIBOHF23SPDLT+29_CN=RECIPIENTS_CN=967CC93F50F7465E932F3E6F1D294D67-DBEHRENS Redacted |
| Sent: | Tuesday, July 23, 2019 1208 PM |
| To: | behrens_doug@yahoo.com |
| Subject: | FW: bars |
| Attachments: | Some Bar Slides.pdf |

From: Meulen, Kristoffel Frederick <kmeulen@hersheys.com>
Sent: Tuesday, February 12, 2019 8:22 AM
To: Doug Behrens <dbehrens@amplifysnacks.com>
Subject: bars

Have some more stuff I need to organize.

d.      On August 1, 2019, Behrens sent to his personal email account a 19-slide deck titled "BFY WHSE Test Store Proposal – Redacted "  The deck, which is marked "Confidential," details marketing research conducted and planned by Amplify and reveals sales and marketing tactics employed by Amplify.

| | |
|---|---|
| From: | Doug Behrens <IMCEAEX-_O=EXCHANGELABS_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+20+28FYDIBOHF23SPDLT+29_CN=RECIPIENTS_CN=967CC93F50F7465E932F3E6F1D294D67-DBEHRENS Redacted |
| Sent: | Thursday, August 1, 2019 11:28 AM |
| To: | 'behrens_doug@yahoo.com' |
| Subject: | FW: Amplify Snacks - Better For You Snacking Category Follow Ups |
| Attachments: | BFY WHSE Test Store Proposal - Redacted Proposal.pptx |

e.      On August 1, 2019, Behrens sent to his personal email account an Excel spreadsheet titled "Copy of Customer Assignments 7-13-19," which is a lengthy list of Amplify's customers and information about their preferences.

| | |
|---|---|
| From: | Doug Behrens <IMCEAEX-_O=EXCHANGELABS_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+20+28FYDIBOHF23SPDLT+29_CN=RECIPIENTS_CN=967CC93F50F7465E932F3E6F1D294D67-DBEHRENS@namprd05.prod.outlook.com> |
| Sent: | Thursday, August 1, 2019 11:55 AM |
| To: | 'behrens_doug@yahoo.com' |
| Subject: | FW: CSR and Sales Rep |
| Attachments: | Copy of Customer Assignments 7-31-19.xlsx |

f.      On August 6, 2019, Behrens sent to his personal email account an Excel spreadsheet titled "Copy of [Redacted] Roster 5-18-18," which provides a comprehensive snapshot of the corporate organization chart for [Redacted], a critical Amplify customer.  The Excel document was initially sent to Behrens on May 18, 2018.

| | |
|---|---|
| From: | Doug Behrens <IMCEAEX-_O=EXCHANGELABS_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+20+28FYDIBOHF23SPDLT+29_CN=RECIPIENTS_CN=967CC93F50F7465E932F3E6F1D294D67-DBEHRENS@ [Redacted] |
| Sent: | Tuesday, August 6, 2019 12:56 PM |
| To: | 'behrens_doug@yahoo.com' |
| Subject: | FW: Customer Org Charts/Rosters - REPLY REQUESTED |
| Attachments: | Copy of [Redacted] Roster 5-18-18.xlsx |

From [Redacted]      Redacted
Sent: Friday, May 18, 2018 11:59 AM
To: Doug Behrens <dbehrens@amplifysnacks.com>
Subject: Customer Org Charts/Rosters - REPLY REQUESTED

[Redacted]

g.      On August 6, 2019, Behrens sent to his personal email account a 32-slide deck titled "Amplify Vision & Strategy," which Behrens and his team presented at the February 2019 meeting of Hershey's Board of Directors.  The deck, which is stamped "Company Confidential," includes details of Amplify's financial condition and strategic direction.

| From: | Doug Behrens <IMCEAEX-_O=EXCHANGELABS_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+20+28FYDIBOHF23SPDLT+29_CN=RECIPIENTS_CN=967CC93F50F7465E932F3E6F1D294D67-DBEHRENS░░░░░░░Redacted░░░░░░░ |
|---|---|
| Sent: | Tuesday, August 6, 2019 2:51 PM |
| To: | 'Doug Behrens' |
| Subject: | Board Of Directors Presentation.pptx |
| Attachments: | Board Of Directors Presentation.pptx |

43.     Behrens had no legitimate Hershey-related reason to retain these files or have them in his personal email account after he announced his resignation from Hershey (and certainly not after his employment at Hershey ended).

44.     The above files are just a representative sample of the more than 100 Hershey documents that Behrens sent to this personal email account during the 30-day period after he announced his resignation and before his last day.

45.     What is worse, Hershey does not know the full extent of Behrens's misconduct and what other information he may have taken.  That is because on August 10, 2019 (just days before the end of his employment at Hershey), Behrens re-installed the Windows operating system on his Amplify laptop.  His doing so wiped all data from the laptop,  hiding whether, for example, he downloaded files from his laptop to a portable storage device.

46.     That evening (at 1:08 a.m. on August 11, 2019), Behrens sent himself an email titled "Check – Test" in an apparent attempt to see if his wiping efforts had removed evidence of *emails* that he sent to himself.  Thankfully for Hershey, they did not.

| From: | Doug Behrens |
|---|---|
| Sent: | Sunday, August 11, 2019 1:08 AM |
| To: | Doug Behrens |
| Subject: | Check - Test |

47.     Behrens did not have permission to re-install Windows on his laptop and had no legitimate business purpose for doing so.

48.     The only reasonable conclusion that can be drawn is that Behrens downloaded Hershey files from his computer and then attempted to prevent the Company from discovering his actions.

49.     Given that Behrens had no legitimate Hershey-related reason to retain Hershey's files after his employment ended, Hershey believes that he took the files to use in his new employment at KIND.

**F.     The Compensation and Executive Organization Committee of Hershey's Board of Directors Determines that Behrens Violated or Threatened to Violate the Terms of His Stock Award.**

50.     On December 12, 2019, the Compensation and Executive Organization Committee of Hershey's Board of Directors met and determined that, based on the conduct described above, Behrens violated or threatened to violate the terms of the Stock Award.

51.     Accordingly, the Stock Award requires Behrens to immediately deliver to Hershey the cash equivalent of any RSUs issued to him under the Award that have vested, plus any dividends paid on such shares.

52.     Behrens owns 2,392 vested RSUs that were issued to him under the Stock Award.

**G.     Hershey Again Asks Behrens to Pay the Money That He Owes It, But Behrens Refuses to Acknowledge That He Owes Hershey Any Money.**

53.     On September 27, 2019, Hershey made another entreaty to Behrens.  It sent him a letter that (among other things) requested that he repay Hershey the $250,000 Sign-On Bonus and outlined what Hershey had discovered regarding Behrens's breaches of his confidentiality obligations and, accordingly, requested that Behrens pay to Hershey the cash equivalent value of his 2,392 Hershey vested RSUs plus any dividends paid on such RSUs; pay Hershey's fees and costs (including expert costs) in pursuing this relief; and commit in writing to comply with all

contractual, statutory and common law obligations to Hershey going forward. Hershey asked for a response by October 2, 2019, and sent a similar letter to KIND.

54.     Hershey has not received any offer of payment since that time and was left with no choice but to seek relief from this Court.

**H.     The Offer Letter/Employment Agreement and Stock Award Both Contain Valid Pennsylvania Choice-of-Law and Forum-Selection Clauses.**

55.     The Offer Letter/Employment Agreement has choice-of-law and forum-selection provisions that state that it shall be governed by the laws of the Commonwealth of Pennsylvania and that any action relating to the Agreement must be brought only in the federal or state courts, as appropriate, located in the Commonwealth of Pennsylvania:

> This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without reference to principles of conflict of laws. Employee expressly consents that . . . any action or proceeding relating to a breach or the enforceability of this Agreement will be brought only in the federal or state courts, as appropriate, located in the Commonwealth of Pennsylvania . . . . Employee expressly waives the right to bring any such action in any other jurisdiction. . . .

*See* Ex. B, Employment Agreement, ¶ 1(a).

56.     The Stock Award, too, has choice-of-law and forum-selection provisions that states that it shall be governed by the laws of the Commonwealth of Pennsylvania and that any action relating to the Award must be brought only in the federal or state courts, as appropriate, located in the Commonwealth of Pennsylvania:

> The award of RSUs and all terms and conditions related thereto, including those of [The Hershey Company Equity and Incentive Compensation Plan], shall be governed by the laws of the Commonwealth of Pennsylvania.
>
> . . .
>
> Grantee expressly consents that . . . any action or proceeding relating to a breach or the enforceability of this Notice of Special Award will be brought only in the federal or state courts, as appropriate, located in the Commonwealth of

Pennsylvania . . . . Grantee expressly waives the right to bring any such action in any other jurisdiction . . .

*See* Ex. C, Stock Award, ¶ 11(G).

## COUNT I
## BREACH OF CONTRACT:  BEHRENS MUST REPAY HIS $250,000 SIGN-ON BONUS

57.     Hershey restates and reasserts the previously numbered allegations as though fully set forth herein.

58.     Pennsylvania law governs this cause of action based on valid and enforceable choice-of-law provisions (*see* ¶ 59, *supra*).

59.     The Offer Letter/Employment Agreement was made for valid consideration—namely, Behrens's employment (and continued employment) and the generous salary and bonuses provided to him, as well as the confidential information to which he was provided access in connection with his employment.

60.     The Offer Letter/Employment Agreement is a binding and enforceable contract.

61.     Hershey made clear in the Offer Letter/Employment Agreement that Behrens would be required to repay the $250,000 Sign-On bonus if he voluntarily terminated his employment within 24 months of his start date.  *See* Ex. A, Offer Letter at 2  ("If you voluntarily terminate your employment with The Hershey Company within 24 months of your Start Date, you agree to repay the full amount of the Sign-On Bonus within 30 days of your last day of employment").  Hershey further noted that "[y]our signature below indicates your agreement to these repayment terms," and Behrens did, in fact, sign the Offer Letter.  *See id.* at 2, 5-6.

62.     Behrens voluntarily terminated his employment on August 16, 2019, which is less than 16 months after his start date.

63.     Hershey is entitled to repayment of Behrens's $250,000 Sign-On bonus.

64.     Behrens and Hershey further agreed that Behrens must "reimburse [Hershey] for all reasonable attorneys' fees and costs incurred in enforcing" the terms of the Offer Letter/Employment Agreement.  *See* Ex. B, Employment Agreement, ¶ 10.

65.     Accordingly, Hershey is entitled to (a) $250,000.00 plus prejudgment interest and (b) the costs, expenses and reasonable attorneys' fees that it incurs in this action.

**COUNT II**
**BREACH OF CONTRACT:  BEHRENS MUST PAY THE CASH EQUIVALENT VALUE OF HIS VESTED RSUS ISSUED TO HIM UNDER THE STOCK AWARD**

66.     Hershey restates and reasserts the previously numbered allegations as though fully set forth herein.

67.     Pennsylvania law governs this cause of action based on valid and enforceable choice-of-law provisions (*see* ¶ 59, *supra*).

68.     The Stock Award was made for valid consideration—namely, Behrens's employment (and continued employment), the RSUs awarded to him, and the confidential information to which he was provided access in connection with his employment.

69.     The Stock Award is a binding and enforceable contract.

70.     By secretly sending to an unsecured personal email address Hershey's trade secret and confidential information in the days before his employment ended and wiping the data from his work laptop, Behrens breached Section 8 of the Stock Award, in which he promised that he would "not either during his/her employment or at any time after the termination of his/her employment with Hershey, use or disclose any Confidential Information relating to the business of the Company which is not generally available to the public."  *See* Ex. C, Stock Award.

71.     Based on Behrens's conduct, it is reasonable to assume that he further used and disclosed Hershey's Confidential Information (as that term is defined in the Stock Award)

beyond initially sending it to a non-secure personal email address (which independently constitutes a disclosure or threatened disclosure of Hershey's Confidential Information).

72.     Behrens owns 2,392 RSUs that have vested under the Award.  *See* Ex. C, Stock Award, ¶ 3.  The current cash equivalent (as of the date that this Complaint is being filed) of those RSUs is $367,961.40.  Plus, Behrens was issued two dividends on those RSUs (one on August 22, 2019 and one on November 21, 2019), which yielded Behrens an additional $3,698.03.  Behrens must immediately deliver to Hershey $367,961.40 (or whatever the current cash equivalent of 2,392 shares of Hershey stock is on the date that Behrens makes payment) plus $3,698.03 plus any other dividends that Hershey declares on Behrens's vested RSUs from now until the entry of judgment.

73.     Behrens and Hershey further agreed that Behrens must "reimburse [Hershey] for all reasonable attorneys' fees and costs incurred in enforcing" the terms of the Stock Award.  *See* Ex. C, Stock Award, ¶ 11(A).

74.     Hershey is entitled to (a) $367,961.40(or whatever the current cash equivalent of 2,392 shares of Hershey stock is on the date that Behrens makes payment) plus $3,698.03 plus any other dividends that are issued to Behrens on the 2,392 RSUs from now until the entry of judgment; and (b) the costs, expenses and reasonable attorneys' fees that it incurs in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Hershey respectfully requests that this Court grant the following relief:

(i)      Enter judgment in favor of Hershey;

(ii)     Order Behrens to repay to Hershey the $250,000 Sign-On bonus that Hershey paid to him, plus prejudgment interest;

(iii)    Order Behrens to pay to Hershey the cash equivalent of 2,392 shares of Hershey

stock (value to be determined as of the date that Behrens makes payment) plus any dividends

paid on such shares;

(iv)    Order Behrens to pay Hershey's costs, expenses and reasonable attorneys' fees

incurred in this action, as provided for in the Offer Letter/Employment Agreement and Stock

Award;

(v)    Award such other relief as this Court may deem just and proper.

Dated: January 27, 2020                    Respectfully submitted,

                                           **MORGAN, LEWIS & BOCKIUS LLP**

                                           /s/ *Michael Burkhardt*
                                           Michael S. Burkhardt
                                           Michael J. Puma (*pro hac vice* forthcoming)
                                           Benjamin K. Jacobs (*pro hac vice* forthcoming)
                                           1701 Market Street
                                           Philadelphia, PA 19103
                                           Tel:  215.963.5000
                                           Fax:  215.963.5001
                                           michael.burkhardt@morganlewis.com
                                           michael.puma@morganlewis.com
                                           benjamin.jacobs@morganlewis.com

                                           *Attorneys for Plaintiff The Hershey Company*