**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------x
                         :

THE HERSHEY COMPANY,         :    No. 1:20-cv-00140-SHR
                         :
               Plaintiff,    :    Judge Sylvia H. Rambo
                         :
         v.               :    Electronically Filed
                         :
DOUG BEHRENS,            :
                         :
               Defendant.   :
---------------------------------------------------------:

## ANSWER

    Doug Behrens, by and through his undersigned counsel, hereby

submits his Answer to the Complaint of The Hershey Company ("Hershey").

## MR. BEHRENS' PRELIMINARY STATEMENT

    1.    Hershey's lawsuit is a vindictive attempt to smear the

reputation of a former employee with accusations that Hershey knows to be

false.  The core of Hershey's Complaint is the false allegation that Mr.

Behrens "used or disclosed" Hershey confidential information.  But what

Hershey leaves out of its Complaint are the facts that (a) Mr. Behrens

voluntarily submitted to a comprehensive and highly invasive examination

of his personal electronic devices and files, in which Hershey's lawyers were

heavily involved; (b) the examination proved that Mr. Behrens had *not* "used or disclosed" any Hershey confidential information; (c) Mr. Behrens voluntarily provided a sworn statement to Hershey to that effect; and (d) Hershey accepted that sworn statement and simultaneously provided its own written representation to him confirming that the exhaustive examination had revealed no evidence of Mr. Behrens using or disclosing any Hershey confidential information. Nevertheless, on the same day that Hershey accepted Mr. Behrens' statement and provided its own written representation, Hershey filed this lawsuit setting forth accusations that directly contradict that representation. In making such misrepresentations, Hershey presumably hides behind the defamation and libel privilege of court filings in an effort to assassinate Mr. Behrens' character and destroy his reputation.

2.     Evidently Hershey feels vindictive toward Mr. Behrens and motivated to smear his reputation with knowingly false allegations because he had the temerity to resign from Hershey after more than a year of Hershey's broken promises to him.

3.     Mr. Behrens joined Hershey as the Chief Customer Officer of its Amplify Snack Brands subsidiary in May 2018. He accepted the position

expressly in reliance on Hershey's promises that (<u>a</u>) he would have autonomy to run the business, (<u>b</u>) he would have autonomy to choose his team, and (<u>c</u>) the company would relocate the Amplify headquarters from Texas to Colorado, Mr. Behrens' state of residence.  Hershey reneged on all those promises, with the result that Mr. Behrens virtually lived on airplanes and at airports throughout his tenure at Hershey.  After over a year of backbreaking travel and Hershey's interference with Mr. Behrens' management of Amplify brands, Mr. Behrens decided to resign.

4.     On July 16, 2019, Mr. Behrens gave notice of his intent to resign to Chris Scalia, then Head of Global Human Resources at Hershey, and informed Mr. Scalia that he had accepted a role with KIND.  Mr. Scalia asked Mr. Behrens to stay on for an additional transition period in order to help with an orderly transition.  Mr. Scalia also asked Mr. Behrens to keep confidential his plans to work for KIND so as to limit distractions, not disrupt the transition, and give Mr. Scalia the opportunity to discuss the situation with other Hershey executives.  Mr. Scalia expressly promised that if Mr. Behrens would agree to stay on for a transition period, Hershey would not seek to claw back the $250,000 sign-on bonus Mr. Behrens received when he started at Hershey – precisely the sign-on bonus that is now the

subject of Hershey's first cause of action against Mr. Behrens. In that conversation, Mr. Scalia twice said that he "sw[ore] on [his] kid's life" that Hershey would not come after Mr. Behrens for return of the sign-on bonus. As a further enticement to encourage Mr. Behrens to stay, Mr. Scalia promised that he would bridge Mr. Behrens' last day through a "paid garden leave" in order to enable Mr. Behrens to vest in an award of Restricted Stock Units ("RSUs"). Mr. Behrens was very forthright that he had been willing to walk away from the RSUs, but Mr. Scalia encouraged him to stay for a transition period so that the RSUs would vest – precisely the RSUs that are the subject of Hershey's second cause of action. Although Mr. Behrens would have preferred to leave more quickly, he agreed, in reliance on Mr. Scalia's promises and representations, and out of a sense of loyalty and respect, to stay on for the transition period.

5.     Although August 16, 2019, was Mr. Behrens' last official day on Hershey's payroll, he promised his successor and other Amplify colleagues that he would remain available to them and continue to assist them if they had any outstanding questions. As it turned out, and as he expected, Amplify and Hershey executives did in fact reach out to Mr. Behrens with questions and requests for assistance in the weeks and months

after he left.

6.      Mr. Behrens' successor had almost no knowledge of the relevant market or customers and had also been unavailable during the final two weeks of Mr. Behrens' transition period.  With some very significant business decisions and meetings both internally and with customers scheduled to occur shortly after Mr. Behrens' last day, Mr. Behrens felt personally responsible to remain available to help his successor.  To ensure he would be able to assist, Mr. Behrens emailed a collection of Hershey documents to his personal Yahoo! email account so that he would be able to reference them if his successor and/or Amplify colleagues called with questions or seeking assistance.  Ultimately, however, as further detailed below, Mr. Behrens never used, disclosed, or even accessed any of these documents.

7.      As Hershey well knows, Mr. Behrens did not "wipe" his Hershey-issued laptop in order to try to "cover his tracks" of forwarding the Hershey documents, as Hershey's Complaint dramatically, but falsely, alleges.  Rather, Mr. Behrens expressly confirmed with Hershey's own IT department that re-installing Windows on the Hershey-issued laptop would *not* cause any data to be lost or unavailable to Hershey.  Mr. Behrens wanted

to remove sensitive personal information (*e.g.*, personal tax returns) from the laptop prior to use by the next Hershey employee who would use it after Mr. Behrens left Hershey and returned the laptop, but he also first wanted expressly to confirm with Hershey IT (and did so confirm) that doing so would *not* cause any data to be lost – the opposite of an attempt to "cover his tracks."

8.     The most glaring omission from Hershey's Complaint is any mention of the immediate, thorough, and responsible steps Mr. Behrens and KIND took when Hershey raised a concern about the documents he had forwarded to his personal email account.  Within 24 hours after receiving a letter from Hershey's lawyers raising concerns, Mr. Behrens voluntarily delivered his personal laptop, his KIND-issued laptop and his personal iPhone for inspection by a highly-regarded computer forensics firm ("Consilio") and proceeded with a fully transparent process to address Hershey's concerns and demonstrate to Hershey conclusively that he had not used or disclosed any of the Hershey documents.

9.     Over the next several months, Mr. Behrens, through counsel, worked cooperatively with Hershey's lawyers to facilitate an exhaustive and highly intrusive examination of his personal electronic devices and files.

Not only were his personal computer and iPhone examined, but he also gave full access to his personal email account and text messages, including purely personal communications with his friends and family.  His KIND-issued laptop and KIND email account were also part of the review.  The process was fully transparent:  Hershey's lawyers (<u>a</u>) participated in developing and agreeing upon a written protocol for Consilio to forensically examine all the materials; (<u>b</u>) were involved and updated throughout the review period; and (<u>c</u>) ultimately had the opportunity to review over 1000 documents that were identified by Consilio as being responsive to an intentionally overbroad set of search terms.

10.    The result of that comprehensive, transparent, and invasive process was complete vindication of Mr. Behrens.  The review demonstrated conclusively that Mr. Behrens did not use or disclose any Hershey documents.  Following the review, Hershey asked Mr. Behrens to sign a sworn declaration, drafted by Hershey's lawyers, further confirming that he did not use or disclose any Hershey confidential information and that he had followed Hershey's instructions to delete those Hershey documents remaining in his possession.  Mr. Behrens willingly signed the declaration. Hershey accepted the signed declaration and simultaneously provided its

7

own written representation to him confirming that the review revealed no evidence of Mr. Behrens using or disclosing any Hershey confidential information.

11.     Yet on the very same day that Hershey accepted Mr. Behrens' declaration and made its written representation to him, Hershey filed this lawsuit, falsely claiming that it had "no choice" but to do so "despite its good faith efforts to resolve" issues surrounding Hershey's present claim for repayment of the sign-on bonus and the cash value of the RSUs.

12.     Once again, Hershey omits the true facts.  In fact, both Mr. Behrens and KIND invited a discussion about attempting to resolve this matter amicably multiple times.  KIND reached out to Hershey on a senior executive level in November 2019 to reiterate that both Mr. Behrens and KIND were committed to ensuring that Hershey's information would be treated in an appropriate manner and to let Hershey know that a business-to-business channel remained open and available for bringing the matter to an amicable resolution after the forensic analysis being conducted under the lawyers' supervision was completed.  After the forensic work was completed and Hershey confirmed on January 24, 2020, that the forensic examination had revealed no evidence of any use or disclosure of Hershey documents,

KIND reached out to Hershey again, on January 26, suggesting that the companies meet at a senior executive level to try to resolve the two remaining issues (*i.e.*, Hershey's claims to return of the sign-on bonus and the cash value of the RSUs).  Additionally, the parties' respective counsel were scheduled to speak about a resolution of those two remaining issues on January 27, 2020.  But Hershey did not agree to a business meeting, canceled the discussion between the lawyers at the last minute, and instead filed this lawsuit later the same day without warning.

13.     Hershey apparently decided it would rather file the lawsuit and publicly smear Mr. Behrens' reputation than engage in any conversation about amicably resolving the two issues that remain following the definitive conclusion that Mr. Behrens never used or disclosed any Hershey confidential information.  The vindictive motive is clear.  It is not because Hershey has any genuine belief that Mr. Behrens used or disclosed Hershey confidential information; Hershey well knows that is not the case.  Rather, as Hershey and its Amplify division face problems with lagging business performance, employee defections and low morale (which discovery will reveal), instead of acknowledging that Hershey lost yet another highly regarded team leader, it sought to divert attention from its talent exodus by

discrediting him with this lawsuit.

## RESPONSES TO HERSHEY'S ALLEGATIONS

Mr. Behrens responds to the specific allegations in the enumerated paragraphs of the Complaint as follows.[1]

## PRELIMINARY STATEMENT

1.      Mr. Behrens denies the allegations contained in Paragraph 1 of the Complaint.

2.       Mr. Behrens admits that he started at Amplify Snack Brands, Inc. on May 1, 2018, which at the time was owned by Hershey, and he otherwise denies the allegations contained in Paragraph 2 of the Complaint.

3.       Mr. Behrens admits that on July 16, 2019 he provided notice of

---

[1] Except as otherwise expressly admitted herein, Mr. Behrens denies each and every allegation contained in the Complaint, including, without limitation, any allegations in introductory sections, headings, or subheadings of the Complaint, and specifically denies any liability to Hershey.  Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, any allegations in the Complaint to which no responsive pleading is required shall be considered denied.  To the extent Mr. Behrens uses certain terms from the Complaint in this Answer, such use is not an acknowledgement or admission of any characterization Hershey seeks to associate with any such terms.  Mr. Behrens expressly reserves the right to seek to amend and/or supplement this Answer as may be necessary.

his intent to resign from Amplify.  Mr. Behrens further admits that in reliance on Mr. Scalia's promise that Hershey would not demand repayment of Mr. Behrens' sign-on bonus, Mr. Behrens agreed to continue working at Amplify for a transition period.  Mr. Behrens otherwise denies the allegations contained in Paragraph 3 of the Complaint.

4.    Mr. Behrens denies the allegations contained in Paragraph 4 of the Complaint.

5.    Mr. Behrens admits that he sent documents from his Hershey work email account to his personal Yahoo! email address.  Mr. Behrens refers to the documents for the full contents thereof and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegation that these documents contained Hershey's trade secret and/or confidential business information.  Mr. Behrens otherwise denies the allegations contained in Paragraph 5 of the Complaint.

6.    Mr. Behrens admits that he sent emails and attached documents from his Hershey work email account to his personal Yahoo! email address on July 23, 2019.  Mr. Behrens refers to the emails and documents for the full contents thereof and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegation that these emails

11

and documents contained Hershey's confidential and trade secret information.  Mr. Behrens otherwise denies the allegations contained in Paragraph 6 of the Complaint.

7.     Mr. Behrens admits that he sent emails and attached documents from his Hershey work email account to his personal Yahoo! email address on July 24, 2019, July 30, 2019, August 1, 2019, and August 6, 2019.  Mr. Behrens refers to the emails and documents for the full contents thereof and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegation that these emails and documents contained Hershey's confidential trade and trade secret information.  Mr. Behrens otherwise denies the allegations contained in Paragraph 7 of the Complaint.

8.     Mr. Behrens admits that he sent an email to his personal Yahoo! email address, refers to the email for the full contents thereof and otherwise denies the allegations contained in Paragraph 8 of the Complaint.

9.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 9 of the Complaint.

10.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 10 of the

Complaint.

11.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 11 of the Complaint.

12.     Mr. Behrens admits that he started at Amplify on May 1, 2018 and that he left within 24 months of his start date.  Mr. Behrens otherwise denies the allegations contained in Paragraph 12 of the Complaint.

13.     Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 13 of the Complaint.

14.     Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 14 of the Complaint.

15.     Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 15 of the Complaint.

16.     Mr. Behrens refers to the Offer Letter and Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 16 of the Complaint.

17.     Mr. Behrens denies the allegations contained in Paragraph 17 of the Complaint.

18.     Mr. Behrens denies the allegations contained in Paragraph 18 of the Complaint.

## THE PARTIES

19.     Mr. Behrens lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of Complaint.

20.     Mr. Behrens admits the allegations contained in Paragraph 20 of the Complaint.

## JURISDICTION AND VENUE

21.     Paragraph 21 of the Complaint contains conclusions of law to which no response is required.

22.     Paragraph 22 of the Complaint contains conclusions of law to which no response is required.

## FACTUAL ALLEGATIONS

23.     Mr. Behrens lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the

Complaint.

24.     Mr. Behrens lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint, except admits that Hershey acquired Amplify, which owns brands including SkinnyPop, Oatmega, and Paqui.

25.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 25 of the Complaint.

26.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 26 of the Complaint.

27.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 27 of the Complaint.

28.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 28 of the Complaint.

29.     Mr. Behrens admits that he received the Stock Award on July 11, 2018.  Mr. Behrens refers to the Offer Letter and Stock Award for the

full contents thereof and otherwise denies the allegations contained in

Paragraph 29 of the Complaint.

30.     Mr. Behrens refers to the Stock Award for the full contents

thereof and otherwise denies the allegations contained in Paragraph 30 of the

Complaint.

31.     Mr. Behrens admits the allegations contained in Paragraph 31

of the Complaint.

32.     Mr. Behrens admits that he was privy to information regarding

Hershey's financial conditions, market/business strategies, product pricing,

and customers.  Mr. Behrens otherwise lacks knowledge or information

sufficient to form a belief as to the truth of the allegations contained in

Paragraph 32 of the Complaint.

33.     Mr. Behrens lacks knowledge or information sufficient to form

a belief as to the truth of the allegations contained in Paragraph 33 of the

Complaint.

34.     Mr. Behrens refers to the Stock Award for the full contents

thereof and otherwise lacks knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 34 of the

Complaint.

35.     Mr. Behrens lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint.

36.     Mr. Behrens admits that on July 16, 2019 he provided notice of his intent to resign from Amplify.  Mr. Behrens further admits that in reliance on Mr. Scalia's promise that Hershey would not demand repayment of Mr. Behrens' sign-on bonus, Mr. Behrens agreed to continue working at Amplify for a transition period.  Mr. Behrens otherwise denies the allegations contained in Paragraph 36 of the Complaint.

37.     Mr. Behrens denies the allegations contained in Paragraph 37 of the Complaint, except admits that he joined KIND as its Chief Customer Officer.

38.     Mr. Behrens denies the allegations contained in Paragraph 38 of the Complaint.

39.     Mr. Behrens refers to the August 20, 2019 Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 39 of the Complaint.

40.     Mr. Behrens denies the allegations contained in Paragraph 40 of the Complaint.

41.     Mr. Behrens lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint.

42.     Mr. Behrens admits that he sent files from his Amplify email account to his personal email account (Behrens_doug@yahoo.com), including, on information and belief, those identified in sub-paragraphs (a)-(g).  Mr. Behrens refers to the files for the full contents thereof and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegation that these files contained Hershey's trade secret and/or confidential information.  Mr. Behrens otherwise denies the allegations contained in Paragraph 42 of the Complaint.

43.     Behrens denies the allegations contained in Paragraph 43 of the Complaint.

44.     Mr. Behrens denies the allegations contained in Paragraph 44 of the Complaint.

45.     Mr. Behrens denies the allegations contained in Paragraph 45 of the Complaint.

46.     Mr. Behrens admits that he sent the email to his personal Yahoo! email address, refers to the email for the full contents thereof, and

otherwise denies the allegations contained in Paragraph 46 of the Complaint.

47.    Mr. Behrens denies the allegations contained in Paragraph 47 of the Complaint.

48.    Mr. Behrens denies the allegations contained in Paragraph 48 of the Complaint.

49.    Mr. Behrens denies the allegations contained in Paragraph 49 of the Complaint.

50.    Mr. Behrens lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 of the Complaint.

51.    Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 51 of the Complaint.

52.    Mr. Behrens admits the allegations contained in Paragraph 52 of the Complaint.

53.    Mr. Behrens admits to receiving the September 27, 2019 Letter. Mr. Behrens refers to the September 27, 2019 Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 52 of the Complaint.

54.     Mr. Behrens admits that neither he nor KIND have made a specific monetary offer to pay Hershey but denies that Hershey was left with no choice but to seek relief from this Court, as the parties had expressly agreed to meet telephonically to try to resolve the remaining issues but Hershey canceled that meeting and filed this lawsuit without warning instead.

55.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 55 of the Complaint.

56.     Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 56 of the Complaint.

## COUNT I- ALLEGED BREACH OF OFFER LETTER

57.     Mr. Behrens restates and reasserts his responses to the previously numbered allegations as though fully set forth herein.

58.     Paragraph 58 contains conclusions of law to which no response is required.  To the extent a response is required, Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations

contained in Paragraph 58 of the Complaint.

59.     Paragraph 59 contains conclusions of law to which no response is required.  To the extent a response is required, Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 59 of the Complaint.

60.     Paragraph 60 contains conclusions of law to which no response is required.  To the extent a response is required, Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 60 of the Complaint.

61.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 61 of the Complaint.

62.     Mr. Behrens admits that August 16, 2019 is less than 16 months after his start date, but otherwise denies the allegations contained in Paragraph 62 of the Complaint.

63.     Mr. Behrens denies the allegations contained in Paragraph 63 of the Complaint.

64.     Mr. Behrens refers to the Offer Letter for the full contents thereof and otherwise denies the allegations contained in Paragraph 64 of the

Complaint.

65.     Mr. Behrens denies the allegations contained in Paragraph 65 of the Complaint.

## COUNT II- ALLEGED BREACH OF STOCK AWARD

66.     Mr. Behrens restates and reasserts his responses to the previously numbered allegations as though fully set forth herein.

67.     Paragraph 67 contains conclusions of law to which no response is required.  To the extent a response is required, Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 67 of the Complaint.

68.     Paragraph 68 contains conclusions of law to which no response is required.  To the extent a response is required, Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 68 of the Complaint.

69.     Paragraph 69 contains conclusions of law to which no response is required.  To the extent a response is required, Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 69 of the Complaint.

70.     Mr. Behrens denies the allegations contained in Paragraph 70 of the Complaint.

71.     Mr. Behrens denies the allegations contained in Paragraph 71 of the Complaint.

72.     Mr. Behrens denies the allegations contained in Paragraph 71 of the Complaint, except admits that he received 2,392 RSUs as well as dividends.

73.     Mr. Behrens refers to the Stock Award for the full contents thereof and otherwise denies the allegations contained in Paragraph 73 of the Complaint.

74.     Mr. Behrens denies the allegations contained in Paragraph 74 of the Complaint.

## ANSWER TO PRAYER FOR RELIEF

Mr. Behrens specifically denies that Hershey is entitled to the relief requested or to any other relief.

## AFFIRMATIVE DEFENSES

Mr. Behrens sets forth below his affirmative defenses.  Each defense is asserted as to all claims asserted against Mr. Behrens in the Complaint. By setting forth these affirmative defenses, Mr. Behrens does not assume the

burden of proving any fact, issue, or element of a claim where such burden properly belongs to Hershey. Mr. Behrens does not in any way waive or limit any defenses which are or may be raised by his denials and averments. These defenses are pled in the alternative, to preserve the rights of Mr. Behrens to assert such defenses, and are without prejudice to the ability of Mr. Behrens to raise other and further defenses.

## FIRST AFFIRMATIVE DEFENSE

### FAILURE TO STATE A CLAIM

Hershey's claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### PROMISSORY ESTOPPEL

Hershey's claims are barred, in whole or in part, by promissory estoppel. Mr. Behrens remained at Hershey for a transition period, in response to and reliance on representations from Hershey's Global Head of HR, made during his July 16, 2019 meeting with Mr. Behrens, that Hershey would not claw back Mr. Behrens' sign-on bonus.

## THIRD AFFIRMATIVE DEFENSE

### WAIVER

Hershey's claims are barred, in whole or in part, by waiver.  During a July 16, 2019 meeting with Mr. Behrens, Hershey's Global Head of HR expressed an intention to relinquish any rights that Hershey may have had to claw back Mr. Behrens' sign-on bonus.

## FOURTH AFFIRMATIVE DEFENSE

### AMENDMENT

Hershey claims are barred, in whole or in part, because the Offer Letter was amended.  At a meeting with Hershey's Global Head of HR on July 16, 2019, Mr. Behrens and Hershey agreed that if Mr. Behrens remained at Hershey for a transition period, Hershey would not seek to claw back Mr. Behrens' sign-on bonus.

## FIFTH AFFIRMATIVE DEFENSE

### PUBLIC POLICY

To the extent any provisions of the Stock Award require repayment of the cash value of vested RSUs and dividends, those provisions are

unenforceable penalties, disproportionate to anticipated harm and contrary to public policy.

Dated:  January 31, 2020                    Respectfully submitted,

                                  By:    */s/ Peter H. LeVan, Jr.*
                                          Peter H. LeVan, Jr. (PA83456)
                                          LeVAN LAW GROUP LLC
                                          One Logan Square – 27th Floor
                                          Philadelphia, PA  19103
                                          (215) 561-1500
                                          plevan@levanlawgroup.com

                                          -and-

                                          Jyotin Hamid*
                                          DEBEVOISE & PLIMPTON LLP
                                          919 Third Avenue
                                          New York, New York 10022
                                          (212) 909-1031
                                          jhamid@debevoise.com
                                          * *pro hac vice* application
                                          forthcoming

                                          *Attorneys for Defendant*
                                          *Doug Behrens*

## CERTIFICATE OF SERVICE

I certify that on January 31, 2020, I caused a true and correct copy of the foregoing Answer to be filed using the Court's Electronic Filing System ("ECF System").  The document is available for viewing and downloading via the ECF System, and will be served by operation of the ECF System upon all counsel of record.


*/s/ Peter H. LeVan, Jr.*
Peter H. LeVan, Jr.